BRADLEY TATUM BRAXTON,

            Plaintiff,

v.                                              Case No. 17-cv-1072-pp

RYAN KAPHINGST,

            Defendant.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 43) AND DISMISSING CASE**

      Plaintiff Bradley Tatum, who is representing himself, is proceeding on a claim that the defendant violated his constitutional rights when he released the plaintiff from custody without giving him "transition period" medication for his mental health problems. Dkt. No. 12. The defendant moved for summary judgment. Dkt. No. 43. The court will grant the defendant's motion and dismiss the case.

**I.    Facts**

      The relevant facts are not in dispute. The plaintiff is a Wisconsin state prisoner who has been in and out of custody at the Outagamie County Jail since 2005. Dkt. No. 49 at ¶3. The defendant is a deputy at the jail. Dkt. No. 46 at ¶2.

      The plaintiff arrived at the jail on June 29, 2017. Dkt. No. 45 at ¶¶1-2. At that time, the plaintiff was not on any prescription medications nor did he bring any prescription medications with him. Id. at ¶¶3-6. Mental health staff

1

examined the plaintiff on July 5, 2017 and gave him medication for schizophrenia and depression. Id. at ¶¶7-8. In the following days, the plaintiff took his medications on some days and refused on other days. Id. at ¶9.

On July 10, 2017, the plaintiff went to a court hearing where the court ordered his release on bond. Id. at ¶10. The plaintiff went back to the jail and told the defendant that he was going to be released soon, so he needed his medication. Dkt. No. 49 at ¶¶2-3, 8-9. The plaintiff states that the defendant "made no attempt to try to locate [the] medication." Id. at ¶4. The defendant "never checked with medical staff about medication he simply ignored the plaintiff's request." Id. at ¶9. The defendant allegedly told the plaintiff that he would not release the plaintiff if the plaintiff didn't "hurry up." Id.

The defendant explains that the plaintiff didn't provide any context or explanation as to why he "needed" medication; he simply stated that he needed his medication. Dkt. No. 45 at ¶¶17-19. The defendant checked the intake/release areas and confirmed that medical staff hadn't brought any medication for the plaintiff's release. Id. at ¶20. The defendant also looked at the Intake Screening Report and saw that the plaintiff wasn't on any medications when he arrived at the jail and that he hadn't brought any medications with him to the jail. Id. at ¶21. The defendant told the plaintiff that "he did not have any medications available to take with him at that time." Id. at ¶22.

The next day, July 11, 2017, the plaintiff called the Outagamie County Health and Human Services Department about his medication. Id. at ¶24.

2

Someone at the department told him to "come in" to get his medication. Id. The plaintiff didn't do this, nor does he have any explanation as to why he didn't pick up his medication. Id. at ¶¶25-26.

Four days later, the plaintiff smoked methamphetamine and broke into a house. Id. at ¶27. He was re-arrested and sent back to the jail. Id.; see also Dkt. No. 49 at ¶5. Upon arriving at the jail, the plaintiff received the same medication as before. Id. The plaintiff apparently filed a grievance; he says that in response to the grievance, a sergeant told him that he "should have been given medication," and a nurse told him that the medication was "available" when the plaintiff was released on July 10, 2017. Id. at ¶¶6-7. The plaintiff states that "since this incident jail has always made sure I received medication when released." Id. at ¶11. In his amended complaint, the plaintiff asserted that "[d]ue to me not receiving my medication I ended up being arrested for burglary." Dkt. No. 10 at 1.

**II. Discussion**

　　A.　Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." Anderson, 477 U.S. at 248. A dispute

3

over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be disputed or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

B.  Analysis

The defendant identifies numerous grounds upon which the court can grant summary judgment. The court will focus on qualified immunity.

Qualified immunity protects government officials from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Campbell v. Kallas, 936 F.3d 536, 545 (7th Cir. 2019) (internal citations omitted). To determine whether a government official is protected by qualified immunity, the court must consider (1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendant violated the plaintiff's constitutional rights

4

and (2) whether that constitutional right was "clearly established" at the time of the alleged violation. Id. The latter inquiry is often dispositive and may be addressed first. Id.

The doctrine of qualified immunity is rooted in the principle of "fair notice." Id. This means that the contours of the constitutional right the plaintiff claims the official violated must be "sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." Id. A right is "clearly established" only if "every reasonable official would have understood that what he is doing violates that right." Id. Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." Id. at 546.

A constitutional right must also have a "sufficiently clear foundation in then-existing precedent." Id. at 545. Existing caselaw must "dictate the resolution of the parties' dispute." Id. While a case directly "on point" isn't required, precedent must have placed the constitutional question "beyond debate." Id.

The law relating to a jail official's duty to provide "transition period" medication to soon-to-be-released inmates is not settled "beyond debate." The Eighth Amendment imposes a duty on jail officials to provide adequate medical care. Farmer v. Brennan, 511 U.S. 825, 832 (1994). This duty arises from the fact that inmates are unable to obtain medical care on their own because they are in custody. Estelle v. Gamble, 429 U.S. 97, 103 (1976) ("An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do

5

so, those needs will not be met."). As the United States Supreme Court has explained, "[t]he affirmative duty to [provide medical care] arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." DeShaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 20 (1989). "[T]he State does not become the permanent guarantor of an individual's [medical issues] by having once offered him shelter." Id. at 201.

Whether a jail official retains this duty towards released inmates is unsettled. Only one circuit, the Ninth Circuit, has affirmatively held that jail officials retain the duty to provide medical care to an out-going inmate "sufficient to cover this transitional period" into the civilian world. Wakefield v. Thompson, 177 F.3d 1160, 1164 (9th Cir. 1999) (holding that "the state must provide an outgoing prisoner who is receiving and continues to require medication with a supply sufficient to ensure that he has that medication available during the period of time reasonably necessary to permit him to consult a doctor and obtain a new supply"). No other circuit has arrived at this conclusion. See, *e.g.* Gilliam v. Johnson, No. 1:12-CV-01008, 2015 WL 1419346, at *8–9 (W.D. Ark. Mar. 27, 2015) (citing cases and noting that "neither the Eighth Circuit nor the Supreme Court have recognized a duty to provide medical care for inmates post release"); Moran v. Summers, No. A-15-CA-00769-SS, 2017 WL 1378406, at *5 (W.D. Tex. Apr. 10, 2017) ("However, neither the Fifth Circuit nor the Supreme Court has recognized such a right.

6

The Ninth Circuit is the only federal appellate court to have done so"); McNair v. Harlem Hosp. Med. Dir., No. 19-CV-0203 (CM), 2019 WL 2176299, at *2 (S.D.N.Y. May 17, 2019) (noting that the general rule in the Second Circuit is that the government does not have a "general duty" under the Constitution to provide medical care to individuals who are not in custody).

The Seventh Circuit has not directly addressed this specific issue, but has written that "[p]rison officials thus have a constitutional duty to provide inmates with the care they require for their serious medical needs. . . . This affirmative obligation ends when imprisonment does." Mitchell v. Kallas, 895 F.3d 492, 496 (7th Cir. 2018). One court in this district recently reasoned that "[o]nce an inmate is released from prison . . . [t]he former inmate is free to present himself to a doctor or the emergency room of a hospital and obtain for himself the medical care he needs." Ryan v. Lucas, Case No. 17-C-1156, dkt. no. 50 at 4 (E.D. Wis. Dec. 19, 2019). In finding that the plaintiff had not stated a claim, Judge Griesbach wrote that "[w]hile it might make sense for County jails or the Wisconsin Department of Corrections to adopt a policy of providing inmates a small amount of medication to help their transition to freedom, such a policy is not constitutionally mandated for the simple reason that once he is released, an inmate is not subjected to punishment." Id. This court agrees.

Given the disparity in caselaw between the Ninth Circuit and other circuits, and the absence of Seventh Circuit or Supreme Court precedent on point, the contours of the constitutional right to "transition period" medication are not

7

clearly established. Existing caselaw does not dictate the resolution of the parties' dispute "beyond dispute." The defendant is entitled to qualified immunity.

Even if the defendant were not entitled to qualified immunity, the plaintiff has not demonstrated that the defendant acted with deliberate indifference to his serious medical need. The evidence does not show that this defendant knew what medication the plaintiff was taking, or what it was for; it does not show that the defendant was aware of any risk to the plaintiff's health if he did not have the medication. To prove deliberate indifference, the plaintiff must show that the defendant was both "aware of facts from which the inference could be drawn that a substantial risk of harm exist[ed]" and that the defendant "dr[ew] the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Nor does the evidence show that the defendant could have given the plaintiff the medication but deliberately chose not to do so. An "inadvertent," or accidental, failure to provide adequate care does not violate the Constitution. Estelle v. Gamble, 429 U.S. 97, 105-106 (1976).[1]

The court notes that section 1983 "protects against 'constitutional violations, not violations of . . . departmental regulation and . . . practices.'" Estate of Simpson v. Gorbett, 863 F.3d 740, 746 (7th Cir. 2017) (quoting Scott v. Edinburg, 346 F.3d 752, 760 (7th Cir. 2003)). To the extent that the plaintiff claims that the defendant violated a *jail* policy by failing to provide transition

---

[1] The defendant also argues that the plaintiff cannot prove that any failure to provide the plaintiff with medication caused him to smoke methamphetamine or to break into a residence. Dkt. No. 44 at 10. The court agrees.

8

period medication, the plaintiff must pursue that claim in state court. Similarly, to the extent that the plaintiff claims that someone at the jail told the plaintiff that they would help him upon release from custody but didn't do so, the plaintiff also must pursue that claim in state court. See Sarauer v. Frank, No. 04-C-273-C, 2004 WL 2324981, at *14 (W.D. Wis. Oct. 6, 2004) ("[The defendant] may have breached an agreement by promising plaintiff warm clothes to wear upon release from prison and then failing to follow through on that promise, but a breach of contract is not the same thing as a constitutional violation. . . . If plaintiff so desires, he is free to pursue a breach of contract claim against [the defendant] in state court.").

The court will grant the defendant's motion for summary judgment and dismiss the case.

### III.   Concluson

The court **GRANTS** the defendant's motion for summary judgment. Dkt. No. 43.

The court **ORDERS** that this case is **DISMISSED** and will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. See Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or

9

Case 2:17-cv-01072-PP   Filed 08/05/20   Page 9 of 10   Document 51

excusable neglect for not being able to meet the 30-day deadline. See Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 5th day of August, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER
Chief United States District Judge**